# Illinois Official Reports

## Appellate Court

***People v. Burnley*, 2014 IL App (5th) 120486**

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. TERRELL BURNLEY, Defendant-Appellant. |
| District & No. | Fifth District<br>Docket No. 5-12-0486 |
| Filed | February 19, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The appellate court rejected defendant's contention that his residential burglary conviction should be reduced to simple burglary because no one resided in the house he burglarized or intended to reside there within a reasonable period of time and, therefore, it was not a dwelling for purposes of the residential burglary statute, since the house was not abandoned, vacant, or unoccupied, and although the victim owned another house where she primarily resided, the utilities at the burglarized house were on, it contained the victim's personal property, including a bed, a washer and dryer, and business documents, she visited the house frequently, she kept it neat and secure, and she was outraged when defendant violated the "privacy and sanctity" the residential burglary statute was designed to protect, and a rational jury could have found that the burglarized house was a dwelling within the meaning of the residential burglary statute. |
| Decision Under Review | Appeal from the Circuit Court of St. Clair County, No. 11-CF-1404; the Hon. John Baricevic, Judge, presiding. |
| Judgment | Affirmed. |

| Counsel on Appeal | Michael J. Pelletier, Alan D. Goldberg, and Robert N. Markfield, all of State Appellate Defender's Office, of Chicago, for appellant. |
|---|---|
| | Brendan F. Kelly, State's Attorney, of Belleville (Patrick Delfino, Stephen E. Norris, and Jennifer Camden, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | PRESIDING JUSTICE WELCH delivered the judgment of the court, with opinion.<br>Justices Goldenhersh and Cates concurred in the judgment and opinion. |

## OPINION

¶ 1    At the conclusion of a jury trial held in the circuit court of St. Clair County, the defendant, Terrell Burnley, was convicted of residential burglary. On May 15, 2012, the defendant was sentenced to prison for a term of eight years. The defendant appeals, arguing that he was not proved guilty beyond a reasonable doubt because the evidence is insufficient to show that the home which he was found guilty of burglarizing was a "dwelling place" as defined in the Criminal Code of 1961 (the Code) (720 ILCS 5/19-3(a), 2-6(b) (West 2010)). He asks that we reduce his conviction to one for simple burglary and remand the cause for resentencing.

¶ 2    Section 19-3(a) of the Code defines the offense of residential burglary, of which the defendant was convicted, as follows: "A person commits residential burglary who knowingly and without authority enters or knowingly and without authority remains within the *dwelling* place of another, or any part thereof, with the intent to commit therein a felony or theft." (Emphasis added.) 720 ILCS 5/19-3(a) (West 2010). Section 2-6(b) of the Code defines the term *dwelling* for purposes of section 19-3(a) as "a house, apartment, mobile home, trailer, or other living quarters in which at the time of the alleged offense the owners or occupants actually reside or in their absence intend within a reasonable period of time to reside." 720 ILCS 5/2-6(b) (West 2010). The defendant argues on appeal that the house which he was found guilty of burglarizing was not a dwelling within the meaning of the residential burglary statute because no one actually resided in it or had any intention within a reasonable period of time to reside in it.

¶ 3    We note that the defendant did not attack the charge prior to or at trial as being insufficient as a matter of law to charge him with residential burglary. On appeal he argues only that the evidence is insufficient to prove him guilty beyond a reasonable doubt. When a defendant challenges the sufficiency of the evidence, it is not the function of the reviewing court to retry the defendant. *People v. Evans*, 209 Ill. 2d 194, 209 (2004). A reviewing court must determine whether, after viewing all the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable

doubt. *Id.* We will not reverse a conviction unless the evidence is so unreasonable, improbable, or unsatisfactory that it raises a reasonable doubt of the defendant's guilt. *Id.* Accordingly, the question presented to us on review is whether, viewing all the evidence in the light most favorable to the prosecution, a rational jury could have found that the house which the defendant burglarized is a "dwelling" within the meaning of the residential burglary statute. We answer that question in the affirmative.

¶ 4      At the defendant's jury trial the following pertinent evidence was adduced. The victim, Lorena Riley, testified that she owned the house in Cahokia which the defendant burglarized. She also owned a house in Shiloh in which she primarily lived. She had purchased the Shiloh house for her parents. She stated that she had lived at the Shiloh house "[m]aybe about on and off for a year."

¶ 5      Although she lived primarily at the Shiloh house, the victim kept a lot of personal property in the Cahokia house including clothing, a bed, a television, a table and chairs, a brand-new stackable washer and dryer which she was planning to install in the house, and a lot of business paperwork. The victim owned rental properties as well as a Blimpie restaurant franchise. Much of this personal property she was planning to move to the Shiloh house. Although the victim agreed that the Cahokia house was "more or less a kind of holding place for some of [her] stuff," she refused to compare it to a storage unit.

¶ 6      On occasion the victim visited the Cahokia house to check on it. She had visited the Cahokia house four days prior to the burglary and at that time had changed the light bulbs in the outside lights. She kept these outside lights on all the time. She always left the house locked. The house did have a security system installed, but it was not active at the time of the burglary because the victim was in the process of moving things from the house. The gates to the yard were kept locked.

¶ 7      The victim described herself as "extremely angry" and indeed even vengeful upon discovering the burglary and ransacking of her house. The house had always been kept neat and tidy. Upon discovering the break-in of the house, the victim went immediately to get materials to board up the broken window.

¶ 8      While the defendant moved for directed verdict at the close of the State's case and the close of all the evidence, the motion was based on the general insufficiency of the evidence and not specifically on the issue of whether the Cahokia house constituted a "dwelling" within the meaning of the residential burglary statute. Both motions were denied.

¶ 9      In closing argument, the State argued that the Cahokia house was indeed the dwelling place of the victim. It was her "second home." She kept there a bed, a television, clothing, a kitchen table, business papers, and a brand-new washer and dryer. The utilities were kept on, and the home was maintained and kept neat and tidy. She visited the home often and locked it when she left. She denied that the house was akin to a storage locker or unit. She was emotionally upset when the home was burglarized.

¶ 10      The defense argued that the house was not a dwelling because the victim had not lived there for a year and was planning on selling the house. She did not actually reside there, and

she did not intend to reside there in a reasonable period of time. Accordingly, the house was not a dwelling within the meaning of the residential burglary statute.

¶ 11 The jury was properly instructed that the State must prove that the defendant illegally entered the "dwelling place" of another and that the term "dwelling place" means "a house in which at the time of the alleged offense the owners actually reside, or in their absence, intend within a reasonable period of time to reside." Nevertheless, during its deliberations, the jury sent a note to the judge asking, "What evidence do we need to say or conclude this was one of her residence[s]?" After conferring with counsel, the judge returned a note stating: "You have an instruction that defines dwelling place. Use the testimony you heard and your common sense to decide that issue." The jury returned with a guilty verdict.

¶ 12 The defendant filed a posttrial motion in which he generally attacked the sufficiency of the evidence but again did not specifically raise the issue of whether the Cahokia house was a dwelling place. This motion was denied.

¶ 13 On appeal, the defendant asks that we reduce his conviction to one for simple burglary because the house he was found guilty of burglarizing was not a dwelling within the meaning of the residential burglary statute. No one actually resided in the house or intended to reside in the house within a reasonable period of time. He contends that no reasonable jury could have found otherwise. The defendant relies on *People v. Roberts*, 2013 IL App (2d) 110524.

¶ 14 In *Roberts*, the burglarized house was vacant. The owners had moved out of state with no plans to return to the house. They had placed the house for sale but had secured no purchaser. The appellate court reduced the defendant's residential burglary conviction to one for simple burglary, finding that the vacant house was not a dwelling within the meaning of the residential burglary statute. The court found that the house was unoccupied and that no specific individual intended to reside there at any time in the future. *Id.* ¶ 7 Because at the time of the burglary no one actually resided in the house and no one intended to reside there in the future, it did not constitute a dwelling. The court pointed out that the residential burglary statute is aimed specifically at protecting the privacy and sanctity of homes, and there can be no violation of that sanctity where there is no one who considers the premises to be his or her home or future home. *Id.*

¶ 15 What makes *Roberts* distinguishable from the case at bar is that in *Roberts*, there clearly was no one who actually resided in the house, nor was there anyone who intended to reside in the house in the future. In the case at bar the jury just as clearly found that the victim, Lorena Riley, *did actually reside* in the Cahokia house at the time of the burglary. This was a reasonable conclusion based on the evidence. The victim's house was not abandoned, vacant, or unoccupied. The utilities remained on. She kept personal property in the house, including a bed, as well as important business documents. She visited the house frequently, did her best to keep it secure, maintained it, and kept it neat and tidy. She experienced outrage when the "privacy and sanctity" of her home were violated by the defendant, the very privacy and sanctity which the residential burglary statute was designed to protect.

¶ 16 A reasonable jury could have found that the victim had two residences, a primary one in Shiloh and a secondary one in Cahokia, both of which she was using at the same time, although perhaps for different purposes. Even if the victim was in the process of moving from one house

to the other, a reasonable jury could have concluded that she had not completely moved to Shiloh. The unique protections afforded by the residential burglary statute are not lost at some point during the moving process, well before the home is completely vacated. To hold that simply because the victim was in the process of moving, no reasonable jury could have found that the Cahokia house was one of the victim's dwellings would do violence to the residential burglary statute, which is designed to protect the privacy and sanctity of the home and to avoid the greater danger and potential for serious harm from burglary of a home as opposed to a business. See *People v. Edgeston*, 243 Ill. App. 3d 1, 10 (1993).

¶ 17      While the owners in *Roberts* had permanently abandoned the burglarized home in favor of a home in a different state, the victim in the case at bar had not permanently abandoned the Cahokia house in favor of the Shiloh house. She continued to use both houses as her dwellings. Unlike the house in *Roberts*, the victim's Cahokia house was not vacant; many of her belongings remained there. The victim frequently visited the Cahokia house, subjecting herself to the very danger against which the residential burglary statute was designed to protect.

¶ 18      Finally, the house did not appear to be abandoned, vacant, or unoccupied. To the contrary, the house was well maintained and well ordered and contained personal belongings indicative of occupancy including clothing, a bed, a kitchen table, and a television. There was no sign that the house was dilapidated, had suffered a fire, or was under major reconstruction or renovation.

¶ 19      After viewing all the evidence in the light most favorable to the prosecution, we conclude that a rational jury could have found that the Cahokia house was a dwelling within the meaning of the residential burglary statute. Accordingly, we affirm the judgment of the circuit court of St. Clair County.

¶ 20      For the foregoing reasons, the judgment of the circuit court of St. Clair County is hereby affirmed.

¶ 21      Affirmed.